UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EDDIE BASHAM, as administrator
of the estate of James Basham, and
FREDA MCCLENDON, individually
and as class representatives on behalf
of all similarly situated persons                                             PLAINTIFFS


V.                                CASE NO. 4:12-CV-04005


AMERICAN NATIONAL COUNTY
MUTUAL INS. CO., *et al.*                                                     DEFENDANTS


## ORDER

Pending is Plaintiffs Eddie Basham and Freda McClendon's Motion to Remand. (ECF No. 104). Defendants have responded. (ECF Nos. 109[1]; 110[2]; 112[3]; 128[4]; 129[5]; & 137[6]).

---

[1] Filed by 21st Century Casualty Company; 21st Century Insurance Company; 21st Century Insurance Company of the Southwest; and 21st Century Insurance Group.

[2] Filed by 21st Century North America Insurance Company; and 21st Century Centennial Insurance Company.

[3] Filed by American National Property and Casualty Company; American National General Insurance Company; American National County Mutual Insurance Company; ANPAC Louisiana Insurance Company; and Pacific Property & Casualty Company.

[4] Filed by Erie Insurance Company; Erie Insurance Company of New York, Erie Insurance Exchange; Erie Insurance Group; Erie Insurance Property & Casualty Company; and Erie Indemnity Company.

[5] Filed by St. Paul Fire and Casualty Insurance Company; St. Paul Fire and Marine Insurance Company; St. Paul Guardian Insurance Company; St. Paul Medical Liability Insurance Company; St. Paul Mercury Insurance Company; St. Paul Protective Insurance Company; St. Paul Surplus Lines Insurance Company; TravCo Insurance Company; Fidelity and Guaranty Insurance Underwriters, Inc.; Travelers Casualty and Surety Company; Travelers Casualty and Surety Company of America; Travelers Casualty Company of Connecticut; Travelers Casualty Insurance Company of America; Travelers Commercial Casualty Company; Travelers Commercial Insurance Company; The Travelers Companies, Inc.; Travelers Excess and Surplus Lines Company; The Travelers Home and Marine Insurance Company; The Travelers Indemnity Company; The Travelers Indemnity Company of America; The Travelers Indemnity Company of Connecticut; The Travelers Lloyds Insurance Company; Travelers Lloyds of Texas Insurance Company; Travelers Personal Insurance Company; Travelers Personal Security Insurance Company; Travelers Property Casualty Company of America; Travelers Property Casualty Insurance Company; and Travelers Property Casualty Corporation.

[6] Filed by Metlife Auto & Home; Metlife Auto & Home Goup; Metropolitan Casualty Insurance Company; Metropolitan Direct P & C Insurance Company; Metropolitan General Insurance Company; Metropolitan Group Property & Casualty Insurance Company; Metropolitan Lloyds Insurance Company of Texas; and Metropolitan P & C Insurance Company.

Plaintiffs have replied (ECF No. 142), and various Defendants have sur-replied. (ECF Nos. 144[7]; 149[8]; 159[9]; 165[10]; 169[11]; & 173[12]). The matter is thoroughly briefed and ripe for the Court's consideration. For the following reasons, Plaintiffs' motion will be granted.

## BACKGROUND

This is a class action suit against numerous auto insurers and their affiliates. Plaintiffs accuse Defendants of conspiring to underpay bodily-injury insurance claims through a software program called "Colossus." The current iteration of the case was filed on December 7, 2011 in Miller County, Arkansas Circuit Court. Defendants removed it to this Court on January 17, 2012.

Several of Plaintiffs' counsel in this case filed "Colossus" suits as early as 2005 in Miller County Circuit Court. James Basham was a party to that 2005 case, *Hensley et al v. CSC et al*, No. cv-2005-59-3. Basham was severed from *Hensley* and became a named plaintiff in *Basham et al., v. CSC et al.*, No. 2005-59-3A, also in Miller County Circuit Court. James Basham died in January 2010, and his son, Eddie, was substituted for him later that year. Eddie Basham voluntarily dismissed the state case on November 14, 2011. He re-filed it on December 7, 2011, and that is the case before this Court.

Meanwhile, the other named Plaintiff in this case, Freda McClendon, was pursuing her own Colossus class-action case in Sebastian County Circuit Court through some of her current counsel. The defendants in McClendon's Sebastian County case, which overlap substantially

---

[7] Filed by American National Property & Casualty Company; American National General Insurance Company; American National County Mutual Insurance Company; ANPAC Louisiana Insurance Company; and Pacific Property & Casualty Company.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] Filed by Metlife Auto & Home; Metlife Auto & Home Group; Metropolitan Casualty Insurance Company; Metropolitan Direct P & C Insurance Company; Metropolitan General Insurance Company; Metropolitan Group Property & Casualty Company; Metropolitan Lloyds Insurance Company of Texas; and Metropolitan P & C Insurance Company.

with the Defendants in this case, removed to federal court in Fort Smith. The federal court there remanded the case to Sebastian County Circuit Court. *McClendon v. Chubb Corp.*, No. 2:11-CV-02034, 2011 WL 3555649 (W.D. Ark. Aug. 11, 2011). Having gotten what she wanted, McClendon found it less to her liking than she expected. When the Sebastian County Circuit Court, unlike the Miller County Circuit Court, declined to postpone a ruling on personal-jurisdiction issues, McClendon voluntarily dismissed her Sebastian County suit. She then joined Eddie Basham in filing the December 7, 2011 Miller County suit that is now before the Court.

Numerous Defendants in this case have filed motions to dismiss, mostly on the basis that personal jurisdiction is lacking. At Plaintiffs' request, however, the Court stayed resolution of the motions to dismiss until it rules on Plaintiffs' remand motion. (ECF No. 126).

## DISCUSSION

Defendants wish to remain in federal court. They claim to have been repeatedly on the losing end of procedural rulings in Miller County Circuit Court; namely, that court's decisions to put off ruling on jurisdictional challenges until the class-certification stage of litigation. Plaintiffs, obtaining the benefit of those rulings, are happy to be in Miller County Circuit Court, and want to return there. This case is in federal court because Defendants contend that the Class Action Fairness Act (CAFA) allows it to be here.

To be in federal court under CAFA, a case must meet several criteria, but only one criterion is at issue in this case: the amount in controversy. According to CAFA, more than $5 million dollars must be in controversy if a case is to remain in federal court. 28 U.S.C. § 1332(d)(2) (2006). Plaintiffs have promised not to seek more than that amount. Defendants find that promise insufficiently reliable. The Court must decide whether Plaintiffs' promise creates a legal certainty that no more than $5 million is in controversy.

### I. CAFA Removal

A defendant invoking federal-court diversity jurisdiction through removal must prove the required statutory amount in controversy by a preponderance of the evidence. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 798 (8th Cir. 2012) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)); *see also* 28 U.S.C. § 1446(c)(2)(B). The defendant does not have to prove by a preponderance that the amount in controversy *is* more than the statutory amount, but rather that a fact finder *might* legally conclude that it is. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009) (quoting *Bell*, 557 F.3d at 958)). If a defendant meets its burden, then a plaintiff seeking remand must establish to a legal certainty that the amount in controversy is less than the statute requires. *Bell*, 557 F.3d at 956. The legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum. *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).

Here, the Court need not decide whether the Defendants have shown by a preponderance that the amount in controversy might exceed the statutory minimum; the Plaintiffs' stipulations, if they are binding, are enough to establish to a legal certainty that the statutory minimum is not met in this case. *Rolwing v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1074 (8th Cir. 2012).

### II. Plaintiffs' stipulations

Removal is defeated by adding to the complaint a binding stipulation promising not to seek greater damages than the jurisdictional minimum. *Bell*, 557 F.3d at 958. The parties in this case agree on that point. They disagree on whether the Plaintiffs' stipulations are binding. Plaintiffs rely on several parts of their complaint as stipulations, but the most unitary portion states:

> Through whatever form of relief may be available, Plaintiffs seek recovery of less than $75,000 for each Plaintiff or Class Member from all Defendants, jointly and

> severally, including all interests and costs, including pre-judgment interest, post-judgment interest, court costs, and non-statutory attorneys fees. Therefore, although Plaintiffs contend Defendants are jointly and severally liable for all damages and relief owed to each Plaintiff and Class Member, Plaintiffs expressly seek less than $75,000 total—from whatever source—on behalf of each Plaintiff or Class Member and so stipulate for all purposes. Plaintiffs further stipulate that they seeks[sic] less than $5,000,000 total aggregate award for themselves combined and all Class Members. Plaintiffs further stipulate that they exclude and forego any actual or potential entitlement to statutory fees. Pursuant to Arkansas Rule of Civil Procedure 8(a), each Plaintiff and each Class Member is limited to less than $75,000 recovery individually and less than $5,000,000 total aggregate award for all Class Members and Plaintiffs so stipulate for all purposes.

(ECF No. 5, at 53–54). Defendants essentially find four faults with Plaintiffs' stipulations. The Court will address each in turn.

    a. **Injunctive relief**

First, Defendants contend that Plaintiffs seek injunctive relief falling outside the stipulation's coverage. The source of this argument is the Plaintiffs' decision to include in each paragraph of their prayer for relief, save one, a separate promise to seek less than the requisite amount in controversy. Plaintiffs omitted to make such a promise in the paragraph seeking injunctive relief. Defendants argue that the omission in that paragraph is an admission that injunctive relief is uncapped. While the omission is odd, the Court finds that it is saved by the unitary stipulation concluding the prayer for relief. That stipulation caps recovery at $75,000 for each member and at $5 million for the whole class, "[t]hrough whatever form of relief may be available." Injunctive relief is a form of relief. Because they capped "whatever form of relief may be available," Plaintiffs capped injunctive relief.

Moreover, the same stipulation purports to limit the "total aggregate award," which would include the value of injunctive relief. Further still, in the "Jurisdiction and Venue" section of their complaint, Plaintiffs stipulate to a "total amount in controversy" of less than $5 million. (ECF No. 5, at 20). "Amount in controversy" includes injunctive relief. *Thomas v. Countrywide*

*Home Loans*, No. 3:11-CV-399-WKW, 2012 WL 527482, at *6 (M.D. Ala. Feb. 17, 2012). The court thus finds that Plaintiffs have sufficiently capped injunctive relief.

### b. "Seek" v. "accept"

Second, Defendants argue that Plaintiffs' promise not to *seek* a certain award does not foreclose Plaintiffs from *accepting* a higher award. For several reasons, the Court is not persuaded by the distinction.

First, this district does not require magic words to effectuate a stipulation. *Smith v. American Bankers Ins. Co.*, No. 2:11-CV-02113, 2011 WL 6090275, at *5 (W.D. Ark. Dec. 7, 2011) ("Magic words are not required in order to make a sworn stipulation binding"); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-CV-04044, 2011 WL 6013024, at *4 (W.D. Ark. Dec. 2, 2011). The intent beneath the words is what matters, and a plain reading of Plaintiffs' stipulation reveals a clear intent to be bound by it.

Second, Plaintiffs' stipulation states that "each Plaintiff and each Class Member is *limited* to less than $75,000 recovery individually and less than $5,000,000 total aggregate award…." (ECF No. 5, at 54) (emphasis added). "Limited" restrains "seeking." By limiting their recovery, Plaintiffs effectively restrict what they will accept.

Third, while Defendants fear that Arkansas Rule of Civil Procedure 54—which states that final judgments shall grant the prevailing party the relief to which it is entitled—entitles Plaintiffs to more relief than they seek, that fear is unfounded. Cases interpreting Federal Rule of Civil Procedure 54(c), which is essentially identical to the Arkansas rule, make plain that Rule 54(c) may not be used as the Defendants fear it will be. Despite a "liberal policy in favor of Rule 54(c) amendments," Rule 54(c) is not without limits. *Baker v. John Morrell & Co.*, 382 F.3d 816, 831–32 (8th Cir. 2004). "A party will not be granted relief that is not pled when it would

unduly prejudice the opposing party." *Trim Fit, LLC v. Dickey*, 607 F.3d 528, 531 (8th Cir. 2010); *Goff v. USA Truck, Inc.*, 929 F.2d 429, 430 (8th Cir. 1991). A court should hold the Plaintiff to his theory as pleaded "[i]f the complaint explicitly or implicitly disclaims certain legal characterizations of the claim." *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996). More germane to this case, "a verdict in excess of the demand could well be deemed prejudicial to the party that sought removal to federal court when the party seeking remand uses a damages-limitation provision to avoid federal court." *Morgan v. Gay*, 471 F.3d 469, 477 (3rd Cir. 2006). Defendants clearly would be prejudiced if Plaintiffs received relief beyond the scope of their stipulations. Rule 54(c) does not countenance underhanded jurisdictional tricks.

Fourth, while it's true that other circuits seem to require *accept* rather than *seek*, *see, e.g.*, *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 389 (5th Cir. 2009), even those circuits evade consensus.[13] *Compare Exxon Chemical*, 558 F.3d at 389, *with Doss v. NPC Int'l, Inc.*, No. 4:10-CV-17-SA-DAS, 2010 WL 1759153, at *6 (N.D. Miss. Apr. 29, 2010) (noting that, in Mississippi, "accept" is not required). The Eighth Circuit, as the parties note, has not spoken to the distinction. Several Eighth Circuit comments, however, are of note.

In *Bell v. Hershey Co.*, 557 F.3d 953, 958 (8th Cir. 2009), the court stated that removal could be defeated by a stipulation not to "seek damages greater than the jurisdictional minimum…." *Bell* did not mention *accept* as a required term; it considered *seek* sufficient. In *Rowling v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1072 (8th Cir. 2012), the Eighth Circuit reaffirmed that "a binding stipulation limiting damages *sought* to an amount not exceeding $5 million can be used to defeat CAFA jurisdiction." (emphasis added). "Stipulations of this sort," the court said, "when filed with a plaintiff's complaint…, have long been recognized as a method

---

[13] Defendants' citations to cases using the phrase "seek or accept" is unpersuasive. *See, e.g.*, *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). If "accept" were the minimum standard, there would be no need to say "seek or accept," because "accept" subsumes "seek."

7

of defeating federal jurisdiction in the non-CAFA context."[14] *Id.* What are "stipulations of this sort"? They are ones that promise not to *seek*. Moreover, after *Rowling*, the Eighth Circuit again confirmed that a commitment not to *seek* federal-jurisdiction damages will avoid removal. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 789 (8th Cir. 2012). *Bell* remains the stipulation model, and that model is satisfied with *seek*.

### c. *Ad damnum* v. separate stipulation

Defendants next find fault with Plaintiffs' stipulations being *in*, rather than separate from, their complaint. That, according to Defendants, makes the stipulations insufficiently reliable. State law determines whether in-complaint stipulations are binding. *See Buller Trucking Co. v. Owner Operator Ind. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 779 (S.D. Ill. 2006) (noting that Illinois law does not limit plaintiff's recovery to amount sought). The question here is whether Arkansas law limits Plaintiffs' recovery to what they seek in their complaint. The Court finds that it does.

First, ARK. CODE ANN. § 16-63-221 binds Plaintiffs to their in-complaint stipulations. According to the statute, a declared amount in controversy intended to establish jurisdiction "is binding on the plaintiff with respect to the amount in controversy…." ARK. CODE ANN. § 16-63-221(b). The statute expresses the will of the legislature "that when a plaintiff pleads with particularity the amount in controversy the plaintiff should be bound by that pleading…." 2011 Ark. Legis. Serv. 336 (West). The statute "appears directed at…recent federal decisions allowing plaintiffs to avoid removal under the Class Action Fairness Act by recognizing demands and stipulations limiting the damages sought." 2 Ark. Civ. Prac. & P. § 11:11 (5th ed. 2012).[15]

---

[14] Plaintiffs in this case did not file their stipulations *with* their complaint, but rather *in* their complaint. The Court will address that issue below.
[15] Defendants challenge the constitutionality of ARK. CODE ANN. § 16-63-221, but, for several reasons, the Court does not find those challenges compelling. First and most importantly, judicial estoppel is an independent basis for

Second, even though ARK. CODE ANN. § 16-63-221 allows plaintiffs to amend their complaints and seek higher damages, that result is foreclosed in this case by judicial estoppel and Arkansas's rule against taking inconsistent positions. In *Rowling v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1072 (8th Cir. 2012), the Eighth Circuit recently recognized judicial estoppel as an independent basis for enforcing stipulations. The *Rolwing* court found that Missouri judicial estoppel, by which a party may not take a later position contrary to an earlier successful one, was enough to bind the plaintiff. *Id.* The court was "confident that Missouri courts will apply judicial estoppel to enforce the terms of the stipulations." *Id.*

This Court finds reliance on Arkansas judicial estoppel similarly availing. Many Arkansas courts have found stipulations binding based on judicial estoppel. *Landown v. Runyon*, No. 3:12-cv-00015 JLH, 2012 WL 460286, at *1 (E.D. Ark. Feb. 13, 2012) ("nor has [plaintiff] entered into a binding stipulation that would preclude her under the doctrine of judicial estoppel from claiming more than $75,000 in damages, were this case remanded…"); *Smith v. American Bankers Ins. Co. of Florida*, No. 2:11-cv-02113, 2011 WL 6090275, at *7 (W.D. Ark. Dec. 7, 2011); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-cv-04044, 2011 WL 6013024, at *4 (W.D. Ark. Dec. 2, 2011); *Murphy v. Reebok Int'l, Ltd.*, No. 4:11-cv-214-DPM, 2011 WL 1559234, at *2 (E.D. Ark. Apr. 22, 2011); *Harris v. Sagamore Ins. Co.*, No. 2:08-cv-00109 JLH, 2008 WL 4816471, at *3 (E.D. Ark. Nov. 3, 2008).

Indeed, any post-removal amendment by Plaintiffs would seem to fall squarely within Arkansas's judicial-estoppel doctrine. That doctrine applies where: 1) a party assumes a position

---

upholding Plaintiff's stipulations. *See infra*. Second, the Court will not speculate on the constitutionality of a state statute, especially when raised as only one component among many of a defense to federal jurisdiction. *See R.R. Comm'n v. Pullman Co.*, 312 U.S. 496, 499 (1941). Third, a preemption defense, which is what Defendant's federal constitutionality argument is, cannot provide federal jurisdiction. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). Finally, many of Defendants' constitutionality arguments have been developed in supplemental responses, long after response deadlines have passed.

clearly inconsistent with a position taken in an earlier case or the same case; 2) a party assumes the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage; 3) a party successfully maintains the earlier position such that the court relied on it; and 4) at least one court's judicial integrity is impaired or injured by the inconsistent positions. *McWhorter v. McWhorter*, 2009 Ark. 458, at 14 344 S.W.3d 64, 72 (quoting *Beverly Enterprises-Arkansas, Inc. v. Thomas*, 370 Ark. 310, 316, 259 S.W.3d 445, 449 (Ark. 2007) (internal citations omitted)).

Here, if Plaintiffs later seek damages exceeding the CAFA minimum, that position would be clearly inconsistent with their current position that they disclaim such relief. Second, that later inconsistent position would be taken with the intent to game the judicial process to stay in state court but receive federal-minimum damages. Third, Plaintiffs current position is successful, in that this Court is relying on it in granting remand. And finally, this Court's judicial integrity would be impaired by the inconsistent positions. Thus, the four elements of Arkansas judicial estoppel squarely apply.

In addition to judicial estoppel, there is Arkansas's rule against taking inconsistent positions. *Murphy*, 2011 WL 1559234, at *2 (citing *McWhorter*, 2009 Ark. 458, at 14, 344 S.W.3d at 72). In Arkansas, "[a] party is bound by his own pleadings and cannot maintain a position inconsistent therewith." *Culpepper v. Smith*, 302 Ark. 558, 573, 792 S.W.2d 293, 301 (Ark. 1990).

Third, there is the matter of Plaintiffs' counsel's ethical obligations. They of course owe candor to this tribunal and the state-court tribunal. Ark. R. Prof. Conduct 3.3. They are further governed by Fed. R. Civ. P. 11 in this Court and by Ark. R. Civ. P. 11 in state court. Those rules impose on attorney pleadings a duty of honesty. Understandably, signed pleadings "deserve[]

deference and a presumption of truth." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). That deference, however, is a dangerous shield. "Representations about damages have important legal consequences and, therefore, raise significant ethical implications for a court officer." *Id.* Our adversary system requires truth. It can "provide no harbor for clever devises to divert the search, mislead opposing counsel or the court, or cover up that which is necessary for justice in the end." *Jones v. Clinton*, 36 F. Supp. 2d 1118, 1131 (E.D. Ark. 1999) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 463 (4th Cir. 1993)). The Court is satisfied that these ethical obligations offer sufficient constraints on Plaintiffs' ability to thwart their damages cap.

Finally, this Court has already decided, with the greater weight of Arkansas federal courts, that Arkansas law sufficiently binds plaintiffs to their in-complaint stipulations. *See, e.g.*, *Oliver v. Mona Vie, Inc.*, No. 4:11-CV-04125, 2012 WL 1965613 (W.D. Ark. May 31, 2012); *McClendon v. Chubb Corp.*, 2:11-CV-02034, 2011 WL 3555649 (W.D. Ark. Aug. 11, 2011); *Murphy v. Reebok Int'l, Ltd.*, No. 4:11-CV-214-DPM, 2011 WL 1559234 (E.D. Ark. Apr. 22, 2011).

All of these reasons convince the Court that Plaintiffs' in-complaint stipulations bind them as well as a separate affidavit would.

### d. Bad faith

Finally, Defendants find fault with Plaintiffs' motives. Defendants cite Plaintiffs' counsel's pattern of favorable state-court rulings and prodigious settlements as evidence that something underhanded is afoot. That pattern, however, does not provide specific evidence of bad faith. Speculation is not enough at this stage. *Rowling v. Nestle Holdings, Inc.*, 666 F.3d 1069, 1073 (8th Cir. 2012) (court would not consider "hypothetical future…non-enforcement of

11

the damage disclaimer because of bad faith"). "A law-driven forum preference" might motivate a damages cap. *Murphy*, 2011 WL 1559234, at *2. That motivation, however, is not bad faith. *Id.*

## CONCLUSION

Plaintiffs have capped their amount in controversy sufficiently to create a legal certainty that they will not recover more than the federal jurisdictional minimum. For the above reasons, Plaintiffs' Motion to Remand (ECF No. 104) should be and hereby is **GRANTED**. This case is remanded to the Circuit Court of Miller County for further proceedings.

IT IS SO ORDERED, this 6th day of September, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge