UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EDDIE BASHAM, as administrator
of the estate of James Basham, and
FREDA MCCLENDON, individually
and as class representatives on behalf
of all similarly situated persons                                                    PLAINTIFFS


V.                                  CASE NO. 4:12-CV-4005


AMERICAN NATIONAL COUNTY
MUTUAL INS. CO., *et al.*                                                            DEFENDANTS


**ORDER**

On September 6, 2012, this Court granted Plaintiffs' Motion to Remand (ECF No. 104) and remanded this case to the Miller County Circuit Court for further proceedings. The Court's remand decision was based upon Plaintiffs' stipulation which limited the class recovery to a sum less than the amount-in-controversy required by the Class Action Fairness Act. Defendants appealed the decision. On April 12, 2013, the Eighth Circuit Court of Appeals summarily remanded the case to this Court for reconsideration in light of the Supreme Court's recent decision regarding stipulations made on behalf of absent class members. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013).

Plaintiffs' Motion to Remand (ECF No. 104) is now before the Court for reconsideration. The parties have filed a large number of supplemental briefs. (ECF Nos. 201-202, 205, 207-208, 211, 213, 216-221, and 224). Also before the Court is Plaintiffs' Motion for Discovery. (ECF No. 212). Defendants have filed responses (ECF Nos. 213-214), and Plaintiffs have filed a reply. (ECF No. 215). These issues are ripe for the Court's consideration.

1

**BACKGROUND**

This is a class action suit against numerous auto insurers and their affiliates. Plaintiffs accuse Defendants of conspiring to underpay bodily-injury insurance claims through a software program called "Colossus." The current iteration of the case was filed on December 7, 2011 in Miller County, Arkansas Circuit Court. Defendants removed it to this Court on January 17, 2012.

Several of Plaintiffs' attorneys in this case filed "Colossus" suits as early as 2005 in Miller County Circuit Court. James Basham was a party to that 2005 case, *Hensley et al v. CSC et al*, No. cv-2005-59-3. Basham was severed from *Hensley* and became a named plaintiff in *Basham et al., v. CSC et al.*, No. 2005-59-3A, also in Miller County Circuit Court. James Basham died in January 2010, and his son, Eddie, was substituted for him later that year. Eddie Basham voluntarily dismissed the state case on November 14, 2011. He re-filed it on December 7, 2011, and that is the case before this Court.

Meanwhile, the other named Plaintiff in this case, Freda McClendon, was pursuing her own Colossus class-action case in Sebastian County Circuit Court through some of her current attorneys. The defendants in McClendon's Sebastian County case, which overlap substantially with the Defendants in this case, removed the case to federal court in Fort Smith. The federal court there remanded the case to Sebastian County Circuit Court. *McClendon v. Chubb Corp.*, No. 2:11-CV-02034, 2011 WL 3555649 (W.D. Ark. Aug. 11, 2011). When the Sebastian County Circuit Court, unlike the Miller County Circuit Court, declined to postpone a ruling on personal-jurisdiction issues, McClendon voluntarily dismissed her Sebastian County suit. She then joined Eddie Basham in filing the December 7, 2011 Miller County suit that is now before the Court on Defendants' removal.

Numerous Defendants in this case have filed motions to dismiss, mostly on the basis that personal jurisdiction is lacking. At Plaintiffs' request, however, the Court stayed resolution of the motions to dismiss until it rules on Plaintiffs' remand motion. (ECF No. 126).

## DISCUSSION

Defendants wish to remain in federal court pursuant to the Class Action Fairness Act ("CAFA"). They claim to have been repeatedly on the losing end of procedural rulings in Miller County Circuit Court; namely, that court's decisions to put off ruling on jurisdictional challenges until the class-certification stage of litigation. Plaintiffs, obtaining the benefit of those rulings, are happy to be in Miller County Circuit Court and want to return there.

For a case to be heard in federal court, CAFA requires, among other things, that the case's amount in controversy be greater than $5 million. 28 U.S.C. § 1332(d)(2) (2006). That is the only CAFA requirement at issue in this case. While Plaintiffs previously argued that they put less than $5 million in controversy by stipulating not to accept more, they now acknowledge that the Supreme Court's recent decision in *Standard Fire Ins. Co. v. Knowles* definitively states that such stipulations may not prevent removal under CAFA. 133 S. Ct. at 1348 (holding that, in order to defeat CAFA jurisdiction, a stipulation must be binding, and a plaintiff bringing a proposed class action cannot bind members of the proposed class before it is certified). Accordingly, the only issue that remains is whether Defendants have submitted sufficient evidence showing that that the amount in controversy exceeds $5 million.

A defendant invoking federal-court diversity jurisdiction through removal must prove the required statutory amount in controversy by a preponderance of the evidence. *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 798 (8th Cir. 2012) (quoting *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)); *see also* 28 U.S.C. § 1446(c)(2)(B). The defendant does not have to

prove by a preponderance that the amount in controversy *is* more than $5 million, but rather that a fact finder *might* legally conclude that it is. *Hartis v. Chicago Title Ins. Co.*, 656 F.3d 778, 781 (8th Cir. 2009) (quoting *Bell*, 557 F.3d at 958)). If a defendant meets its burden, then a plaintiff seeking remand must establish to a legal certainty that the amount in controversy is less than the statute requires. *Bell*, 557 F.3d at 956. The legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum. *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011).

Defendants maintain that CAFA's amount-in-controversy requirement is easily met by calculating the potential damages stemming from Plaintiffs' allegations of a nationwide conspiracy and their requested remedy of disgorgement of all profits attributable to the alleged conspiracy. In response, Plaintiffs claim that they have limited their class to only Arkansas residents, thereby rendering Defendants' calculations of nationwide profits irrelevant. Even setting aside nationwide profits, Defendants maintain that the amount-in-controversy is met by aggregating the potential compensatory damages for Arkansas residents; Arkansas statutory penalties; punitive damages; the value of injunctive relief; and attorneys' fees.

### A. Disgorgement of profits stemming from the alleged nationwide conspiracy

Plaintiffs' Complaint (ECF No. 5) references a "nationwide" conspiracy by Defendants to underpay bodily-injury insurance claims through a software program called "Colossus." Plaintiffs allege that, "[t]hrough this conspiracy, Defendants were not only able to devalue the amounts paid to Plaintiffs and Class members, but also depress the market value of bodily injury claims nationwide." (ECF No. 5, Par. 51). While Plaintiffs allege a nationwide conspiracy, they clearly limit their class to "residents of the state of Arkansas" who "made a covered claim for

bodily injury damages, before September 31, 2009…where [a] Defendant utilized Colossus in evaluation of the claim." (ECF No. 5, Par. 62).

Defendants concede that Plaintiffs have limited their class to Arkansas residents. However, Defendants maintain that Plaintiffs have "failed to limit the scope of disgorgement or unjust enrichment to participation in an Arkansas-only scheme." Defendants point out that Plaintiffs' prayer for relief requests an award of damages "that represents the amount by which Defendants have been unjustly enriched as a result of the Colossus Scheme." (ECF No. 5, p. 52). Plaintiffs also request that Defendants be disgorged of all profits they have derived "from the Colossus conspiracy." *Id*. Defendants read this language as encompassing Defendants' Colossus-related actions and resulting profits nationwide, not just within Arkansas. In other words, Defendants allege that Plaintiffs' are seeking "nationwide damages" on behalf of the purported Arkansas class. If the Court were to follow Defendants' reading of Plaintiffs' requests for disgorgement of profits, there is no dispute amongst the parties that the amount-in-controversy would be in the tens of millions.

To further illustrate their view that Plaintiffs are seeking nationwide damages, Defendants point out that Plaintiffs have propounded extensive discovery requests seeking information on Defendants' Colossus use in *any* state in which a Defendant conducts business. (ECF No. 207, p. 4). Defendants also note that Plaintiffs have included parties in this suit that have allegedly never done business in Arkansas.

Defendants' arguments are well-taken. Plaintiffs' requested relief is somewhat vague when read in conjunction with their requests for discovery and their insistence on including parties that allegedly have done no business in Arkansas. However, Plaintiffs' ability to recover nationwide profits on behalf of an Arkansas class is a legal question that the Court does not need

5

to decide at this time. As explained below, Defendants have carried their burden of proving the amount-in-controversy without factoring in these nationwide profits.

### B. Amount-in-controversy excluding nationwide disgorgement damages

Defendants maintain that the amount-in-controversy requirement is met even when applying Plaintiffs' more narrow view that excludes disgorgements of nationwide profits. The Court will review each of Defendants' calculations in turn.

*1. Compensatory damages*

Plaintiffs' Complaint alleges that Defendants "typically" utilized Colossus to "save up to…twenty percent on all bodily injury claims, including [uninsured motorist] and [underinsured motorist] claims." (ECF No. 5, Par. 4). Using Plaintiffs' own calculation as an example, a claim that was worth $9,000 might be settled for $7,200, representing 80% of the claim's true worth. Based on these figures, a plaintiff would be entitled to $1,800 in compensatory damages.

A subset of Defendants have submitted estimates for compensatory damages in this case. These estimates are based on Defendants' claims payments made to Arkansas residents. In accordance with Plaintiffs' class definition, these Defendants excluded claims where a putative class member's claim was resolved by a judge, jury, or arbitration and claims where a class member was paid the policy limit. After exclusions, the combined total paid on these claims was $2,524,798.19.[1] Relying on Plaintiffs' allegation that using Colossus "typically" resulted in underpayments of 20%, Defendants calculated compensatory damages by assuming a 20% underpayment on all claims. The result is a total of $631,199.55 in compensatory damages.[2]

---

[1] Defendant Metropolitan Property & Casualty Company reports a total of $1,212,541 in paid claims. (ECF Nos. 201, Exh. 2 and 208, Exh. 1). Defendants American National Property & Casualty Company and American National General Insurance Company ("ANPAC") report a total of $1,184,245 in paid claims. (ECF No. 208, Exh 2.). Defendant Traveler's Companies, Inc., and its affiliates, report a total of $128,012.19 in paid claims. (ECF No. 208, Exh 3).

[2] The following equation was utilized to calculate a 20% underpayment on the claims: $2,524,798.19 = .8(x)$.

(ECF No. 208, p. 4). Stated another way, had Colossus not been used to devalue the claims, these Defendants would have paid $3,155,997.74 to the putative class members rather than $2,524,798.19.

Plaintiffs' primary objection to Defendants' compensatory damages calculation is rooted in the blanket use of 20% as the representative underpayment amount on a claim. Plaintiffs argue that, because Colossus might not have tuned every claim by 20% (i.e. some claims might have been underpaid by only 12%), Defendants' calculations are too speculative to meet the amount-in-controversy requirement. Plaintiffs maintain that Defendants should be required to look at each individual claim and determine how much it was actually tuned by Colossus. To that end, Plaintiffs have filed a separate Motion for Discovery (ECF No. 212) which requests permission to conduct jurisdictional discovery so that the actual percentage of tuning for each claim can be established.

The Court finds that Defendants' evidence of compensatory damages is adequate for purposes of determining the amount in controversy. Defendants' calculations are supported by sworn declarations that explain in adequate detail how data was collected, reviewed, and used in determining what was paid to each putative class member. (ECF No. 208, Exh. 1-3). The Court is also satisfied with Defendants' application of a 20% underpayment to all of the claims. While it may be determined later that some of these claims were not underpaid by 20%, Defendants are entitled to rely on Plaintiffs' own underpayment allegations to establish the amount of compensatory damages at this stage in the proceedings. Plaintiffs themselves state that a 20% tuning was "typical," and they have offered no evidence to suggest that these claims were *not* all tuned by 20%. Accordingly, a fact-finder might legally conclude, based on Plaintiffs' allegations, that the putative class members' claims were underpaid by 20% and that they are

entitled to $631,199.55 in compensatory damages. This is sufficient to satisfy the amount-in-controversy pleading requirement. Plaintiffs' request that Defendants be required to produce discovery admitting liability as to how much each and every claim was allegedly "tuned" is a demand for proof that is not required at this stage in the proceedings. *Raskas v. Johnson & Johnson*, 719 F.3d 884, 888 (8th Cir. 2013). Therefore, Plaintiffs' Motion for Discovery (ECF No. 212) should be and hereby is denied.

### 2. Statutory Penalties

Ark. Code Ann. § 23-79-208(d) provides for a 12% penalty to insurers in cases where an insured brings suit and recovers "twenty percent (20%) of the amount demanded or which is sought in the suit." Assuming that Plaintiffs are able to recover at least 20% of the damages they seek in this action, they will be entitled to recover a 12% penalty against Defendants. Accordingly, if Plaintiffs recover $631,199.55 in compensatory damages, the 12% penalty against Defendants would amount to $75,743.95.

### 3. Punitive Damages

The parties disagree regarding the potential availability of punitive damages in this case. Plaintiffs maintain that because they do not explicitly request punitive damages in their Complaint, any argument regarding the calculation of punitive damages is moot. The Court disagrees.

Federal courts applying Arkansas law have held that punitive damages are "assumed to be legally recoverable even [where a] plaintiff's complaint [does] not include a prayer for punitive damages or allege that the defendant acted wantonly or maliciously." *Knowles v. Standard Fire Ins. Co.*, 4:11-CV-04044, 2013 WL 3968490, at *10 (W.D. Ark. Aug. 2, 2013) (citing *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011)).

*See also Thatcher v. Hanover Ins. Grp., Inc.*, 4:10-CV-4172, 2012 WL 1933079, at *6 (W.D. Ark. May 29, 2012) ("[T]here have been cases in which punitive damages have been properly awarded when merited even in the absence of their being sought after or prayed for by a party."); *Bowles v. Osmose Utilities Servs., Inc.*, 443 F.3d 671, 675 (8th Cir. 2006) ("While the complaint did not ask for punitive damages, Fed. R. Civ. P. 54(c) provides that 'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.'").

The relevant question here is not whether Plaintiffs have explicitly requested punitive damages. The question is whether Defendants' actions, as alleged in Plaintiffs' complaint, constitute the type of conduct that could potentially support an award of punitive damages. Plaintiffs' Complaint (ECF No. 5) alleges, among other things, claims for civil conspiracy; insurance bad faith; fraud; and constructive fraud. Specifically, Plaintiffs allege that: "Defendants…actively sought to keep the improper conduct they were engaging in a secret through extensive cooperation and participation by members of the conspiracy"; Defendants "knowingly and intentionally failed to engage in proper claims handling practices and failed to compensate insured persons in an amount promised for losses covered under their automobile insurance policies"; and "Defendants knowingly, purposefully and fraudulently concealed and hid material facts and information from Plaintiffs and failed to disclose material facts and information to Plaintiffs related to Colossus and payment of bodily injury claims[.]" (ECF No. 5, p. 42-50).

Given these allegations and claims of fraud and bad faith, there is certainly a possibility that punitive damages could be awarded to Plaintiffs. *Knowles v. Standard Fire Ins. Co.*, 4:11-CV-04044, 2013 WL 3968490, at *10 (W.D. Ark. Aug. 2, 2013) (holding that similar allegations

of fraud and concealment in the insurance context created a possibility that punitive damages would be awarded) (citing *Columbia Nat'l Ins. Co. v. Freeman*, 64 S.W.3d 720, 723 (Ark. 2002)); *Curtis Lumber Co., Inc. v. Louisiana Pac. Corp.*, 618 F.3d 762, 785 (8th Cir. 2010) (holding that punitive damages are appropriate in cases involving fraud) (citing *Ray Dodge, Inc. v. Moore*, 479 S.W.2d 518, 524 (Ark. 1972)).

     Since Defendants have established that a punitive damages award is legally possible based on Plaintiffs' allegations of fraud and bad faith, the only issue remaining is how much the punitive damages might amount to in this case.  Courts considering the availability of punitive damages in the CAFA amount-in-controversy context have held that utilizing multipliers of four to six times the total amount of compensatory damages is acceptable in determining what punitive damages award might be legally permissible.  *Bass v. Carmax Auto Superstores, Inc.*, 07-0883-CV-W-ODS, 2008 WL 441962, at *2 (W.D. Mo. Feb. 14, 2008) (holding that a punitive damages award of 6.7 times the amount of compensatory damages "would likely be constitutionally acceptable."); *Brown v. City Chevrolet, LLC*, No. 09–0642–CV–W–GAF, 2009 WL 3485833, at *1 (W.D. Mo. Oct. 28, 2009) (holding that a multiplier of more than 3.98 was permissible); *Thatcher v. Hanover Ins. Grp., Inc.*, CIV. 10-4172, 2012 WL 1933079, at *6 (W.D. Ark. May 29, 2012) (holding that punitive damages of over $11 million were potentially available in a case where the breach of contract damages amounted to only a little over $2.4 million); *Kerr v. Ace Cash Experts, Inc.*, 4:10 CV 1645 DDN, 2010 WL 5177977, at *2 (E.D. Mo. Dec. 14, 2010) (holding that a compensatory damages award of only $594,000 could "satisfy the amount in controversy requirement because of the potential for punitive damages and attorneys fees.").

Based on the weight of authority above, the Court finds no constitutional barrier to applying a punitive damages multiplier of six to Plaintiffs' potential compensatory damages. Therefore, Defendants have carried their burden of showing that a punitive damages award of at least $3,787,197.30 might be recoverable in this case.

*4. Attorney Fees*

Under Arkansas law, an insurance policy holder may be entitled to collect "reasonable attorney's fees" expended in prosecuting an action where an insurance company has failed to pay what is owed pursuant to the insurance policy. Ark. Code Ann. § 23-79-208(a)(1). If these statutory attorney's fees are available to a policy holder, the fees may be included in calculating the amount-in-controversy. *Knowles v. Standard Fire Ins. Co.*, 4:11-CV-04044, 2013 WL 3968490, at *10 (W.D. Ark. Aug. 2, 2013) (holding that attorney's fees unincurred at the time of removal may still be included in calculating the amount in controversy); *Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 766 (8th Cir. 2001) ("Statutory attorney fees do count toward the jurisdictional minimum for diversity jurisdiction.").

In this case, there is no dispute that statutory attorney's fees are available to Plaintiffs. The primary question is what constitutes a "reasonable" attorney's fee for purposes of calculating the amount in controversy. Arkansas law dictates a number of factors that may be considered when awarding "reasonable" attorney's fees, including the experience of the attorney, the time and labor required, the amount in controversy, the difficulty of issues involved, and the customary fee for similar services. *See Phelps v. U.S. Credit Life Ins. Co.*, 10 S.W.3d 854, 856 (Ark. 2000). However, at this stage in the proceedings, "a fact-intensive, prospective" analysis of these factors is not appropriate. *Standard Fire Ins. Co.*, 2013 WL 3968490, at *6. Defendants must only show what attorney's fees *might* legally be possible under these circumstances.

11

Other courts considering insurance fraud claims and attorney's fees in the amount-in-controversy context have held that a fee of 40% is a reasonable estimate at this stage in the pleadings. *Thatcher v. Hanover Ins. Grp., Inc.*, CIV. 10-4172, 2012 WL 1933079, at *5 (W.D. Ark. May 29, 2012) ("The Court strongly doubts that any plaintiff's attorney would argue that attorneys' fees permissible under an applicable statute could not be awarded by a court with jurisdiction over the matter."); *Standard Fire Ins. Co.*, 2013 WL 3968490, at *6 ("[E]ven though other courts have found it reasonable to award attorney's fees at a rate of 20–25% of the total recovery, this does not mean that a 40% rate would be legally impossible."). The Court finds no reason why this percentage would not be reasonable in this particular case, and Plaintiffs have not even attempted to argue that this type of award would be legally impossible. Conservatively applying this 40% recovery to only compensatory damages and statutory penalties, Plaintiffs could potentially be awarded $282,777.40 in attorney's fees.

5. *Value of Injunctive Relief*

Plaintiffs' Complaint seeks declaratory and/or injunctive relief "requiring Defendant to stop the use of Colossus in the adjustment of UM'UIM claims of Arkansas insureds; and stopping each and every Defendant…from participating in any forum or group whose aim is to further enhance the use of Colossus…." (ECF No. 5, p. 52). Defendants argue that, based on the estimated value of injunctive relief in former Colossus-related class actions, the potential value of injunctive relief in this case can be safely estimated as 88% of compensatory damages, or $555,455.60. In these other Colossus-related actions, Plaintiffs' counsel submitted documentation valuing injunctive relief at anywhere from 50% to 100% of compensatory damages. (ECF No. 1, Exh. 8). Defendants appear to have averaged those figures to arrive at their 88% estimate in this case.

Plaintiffs do not dispute that the claims and requests for relief in these other Colossus actions are essentially identical to those currently before the Court. However, they maintain that the value of injunctive relief in other actions is not comparable because the settlements in those cases were entered into in 2007 and, in those cases, they were "able to demonstrate an ascertainable value for injunctive relief based on the facts and discovery related to those defendants." (ECF No. 205, p. 14). Plaintiffs argue that because Defendants in this case have not "suggest[ed] that they are still 'tuning' Colossus to underpay UM/UIM claims," there is no evidence that an injunction is even necessary.

The Court is not persuaded by Plaintiffs' attempts to distinguish these Colossus-related actions. Plaintiffs have clearly requested that Defendants be enjoined from using Colossus in the future, and they have offered no evidence to suggest that Defendants cannot or will not continue to utilize Colossus in the future. Under these circumstances, the Court will assume that Plaintiffs may actually be entitled to the injunctive relief they have asked for. Erring on the conservative side of Defendants' proposal and Plaintiffs' counsel's own estimates in other cases, the Court finds that the value of injunctive relief in this case could easily amount to at least 50% of compensatory damages, or $315,599.77. *See Burns v. Massachusetts Mut. Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir. 1987) ("The amount in controversy in a suit for injunctive relief is measured by the value to the plaintiff of the right sought to be enforced.").

## CONCLUSION

Aggregating Defendants' estimates for potential compensatory damages for Arkansas residents ($631,199.55); statutory penalties ($75,743.95); punitive damages ($3,787,197.30); the value of injunctive relief ($315,599.77); and attorneys' fees ($282,777.40) results in total potential damages of $5,092,517.97. Plaintiffs have not countered with evidence showing to a

legal certainty that the amount-in-controversy is $5 million or less. Accordingly, Defendants have met CAFA's jurisdictional requirements. For the reasons stated above, Plaintiffs' Motion to Remand (ECF No. 104) and Motion for Discovery (ECF No. 212) are **DENIED**. The Court's previous order granting remand (ECF No. 178) is hereby vacated.

    IT IS SO ORDERED, this 23rd day of October, 2013.

    /s/ Susan O. Hickey
    Susan O. Hickey
    United States District Judge