UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EDDIE BASHAM, as administrator
of the estate of James Basham, and
FREDA MCCLENDON, individually
and as class representatives on behalf
of all similarly situated persons                                                                               PLAINTIFFS

V.                                         CASE NO. 4:12-CV-4005

AMERICAN NATIONAL COUNTY
MUTUAL INS. CO., *et al.*                                                                                     DEFENDANTS

## ORDER

Before the Court is a Motion to Dismiss (ECF No. 266) filed on behalf of Farm Bureau Property & Casualty Insurance Company ("Farm Bureau"). Plaintiffs have filed a response to the motion. (ECF No. 277). Farm Bureau has filed a reply. (ECF No. 289). The Court finds this matter ripe for consideration.

### BACKGROUND

This action is against over seventy insurance companies, including Farm Bureau, and it arises from their alleged use of a computer software program known as "Colossus." Colossus is a program that was developed, sold, and marketed by the Computer Science Corporation ("CSC"). The program was marketed to insurance companies nationwide as a "knowledge-based system for assessing general damages for bodily injury claims." (ECF No. 246, ¶ 3). According to Plaintiffs, Colossus was capable of being "tuned" or "calibrated" to achieve the goal of underpaying claims by up to twenty percent. Through the use of the Colossus software program, Plaintiffs allege that Defendants "systematically and uniformly pay and paid claimants…less than they were owed for bodily injury claims[.]" *Id*. at ¶ 6. This alleged use of Colossus and the

1

resulting underpayments form the basis of this class action. The proposed class is comprised of "residents of the state of Arkansas" who "made a covered claim for bodily injury damages, before September 31, 2009...where [a] Defendant utilized Colossus in evaluation of the claim."[1] *Id*. at ¶ 92.

Plaintiffs allege the following claims against all Defendants in their First Amended Complaint (ECF No. 246): breach of contract; breach of the covenant of good faith and fair dealing (insurance bad faith); unjust enrichment; fraud; constructive fraud; and tortious interference with contract. While Plaintiffs' Amended Complaint does not allege civil conspiracy or fraudulent concealment as independent causes of action, the Amended Complaint does allege that Defendants were involved in a conspiracy to fraudulently conceal their use of Colossus. (ECF No. 246, ¶ 100-118). Plaintiffs allege that, by virtue of their participation in a Colossus conspiracy, Defendants "have subjected themselves to co-equal responsibility for the actions of all fellow conspirators." *Id*. These conspiracy allegations and their impact on this Court's jurisdiction over certain Defendants are the primary focus of the present motion to dismiss.

Plaintiffs' conspiracy allegations are detailed in the Amended Complaint under the heading, "The nature of the underpayment conspiracy and concert of action among Defendants." (ECF No. 246, ¶ 53-91). The allegations set out in some detail the history of Colossus's development and how CSC introduced it to the American insurance industry as a cost-saving tool. Plaintiffs claim that CSC, a non-party to this case, and Defendants had the goal of using Colossus to depress the value of bodily injury claims nationwide. As evidence of this organized goal, Plaintiffs point to a CSC presentation stating that Colossus is used by "'more than 60% of

---

[1] There are only thirty days in the month of September—not thirty-one as Plaintiffs' Amended Complaint suggests. Accordingly, the Court assumes that Plaintiffs' proposed class is comprised of residents of the state of Arkansas who made a covered claim for bodily injury damages before **September 30, 2009**.

the auto liability market' and has offered '19.8% average reduction to [bodily injury] settlements.'" *Id*. at ¶ 68. Plaintiffs make the leap that, based on these figures, Defendants and CSC "recognized" that the use of Colossus would not only lower their individual payouts but would depress the value of nationwide bodily injury claims, including those in Arkansas. If there is any documentary evidence of this "recognition" or agreement among Defendants to depress the value of claims nationwide, it is not included in the Amended Complaint.

Plaintiffs' conspiracy claims hinge largely on their allegations of secrecy surrounding Colossus. Plaintiffs allege that "each Defendant adopted efforts suggested by CSC and fellow Scheme members to keep the true nature and purpose of Colossus a secret." *Id*. at ¶ 67. Plaintiffs make multiple references to Defendants collectively "agreeing" to keep Colossus a secret from insureds and third parties. Plaintiffs' allegations of collective secrecy appear to arise from CSC's Colossus licensing agreement. Pursuant to the licensing agreement with CSC, an insurance company using Colossus was required to report to CSC if the insurance company was asked to produce Colossus information to a plaintiff in discovery or in a regulatory proceeding or audit. CSC claimed that this notification was necessary in order to "take appropriate action to avoid disclosure of trade secrets and other confidential information." *Id*. at ¶ 76. Based on this information, Plaintiffs conclude that "all fellow Scheme members took the position that almost all items related to Colossus were confidential or trade secrets in an effort to prevent the true nature and purpose of the program from being discovered." The details regarding how or when this alleged position of collective secrecy was forged among Defendants is not alluded to in the Amended Complaint.

Plaintiffs' final conspiracy allegations involve the existence of "Colossus groups" that were sponsored by CSC. According to Plaintiffs, CSC utilized advisory councils and user

3

communities made up of various insurance companies "'to help CSC understand the issues facing insurance companies on a day to day basis as well as being a good venue for to [sic] share industry information and learn from the experiences of other industry leaders.'" *Id*. at ¶ 80. Plaintiffs claim that these user communities allowed Colossus procedures to "cross-pollinate" through insurance companies. Plaintiffs also allege that, through CSC, "best practices" tips were individually disseminated to Defendants. Plaintiffs make no specific allegations and provide no evidence as to what procedures were "cross-pollinated," which Defendants received this "best practices" information from CSC, or which Defendants might have participated in these CSC-sponsored user groups and advisory councils.

In sum, Plaintiffs claim that "Defendants acted jointly and in concert by entering into a mutual agreement, albeit a non-written agreement, to commit a fraud against their own customers as well as those of other insurance companies through the reciprocal non-disclosure policy, and then participated in this fraud through the implementation of their individual Colossus schemes as part and parcel of the overarching Colossus Scheme." *Id*. at ¶ 89.

Farm Bureau argues in its Motion to Dismiss that the Court lacks personal jurisdiction over it due to its lack of contacts with Arkansas. Plaintiffs argue that Farm Bureau's lack of direct contact with Arkansas is irrelevant because personal jurisdiction has been established by Farm Bureau's participation in a civil conspiracy

### DISCUSSION

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss claims for lack of jurisdiction over the person. To defeat a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing of jurisdiction. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994). This *prima facie* showing must be tested, not

by the complaint alone, but "by the affidavits and exhibits presented with the [motion to dismiss] and in opposition thereto." *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974). When conclusory allegations in a complaint are contested and a plaintiff supplies no factual foundation, the complaint's conclusory allegations are insufficient to confer personal jurisdiction over a nonresident defendant. *See Dever v. Hentzen Coatings, Inc*., 380 F.3d 1070, 1072–1073 (8th Cir. 2004). While Plaintiffs ultimately bear the burden of proof on the issue, personal jurisdiction does not have to be proved by a preponderance of the evidence until trial or an evidentiary hearing. *See Dakota Indus., Inc. v. Dakota Sportswear, Inc*., 946 F.2d 1384, 1387 (8th Cir. 1991).

Farm Bureau argues that there is no basis for personal jurisdiction in this case because they do not sell insurance in Arkansas, they are not licensed to do business in Arkansas, they do not have employees or operations in Arkansas, and none of the members of the putative class (i.e. Arkansas residents) are insureds of Farm Bureau. In sum, Farm Bureau argues that Plaintiffs have sued them in a forum to which they have no meaningful connection.

A federal court sitting in a diversity action may assume jurisdiction over a nonresident defendant to the extent permitted by the long arm statute of the forum state. Arkansas's long-arm statute provides that:

> [t]he courts of this state shall have personal jurisdiction of all persons, and all causes of action or claims for relief, to the maximum extent permitted by the due process of law clause of the Fourteenth Amendment of the United States Constitution.

Ark. Code Ann. § 16–4–101(B). Accordingly, the question before the Court is whether exercising personal jurisdiction over Farm Bureau is consistent with the due process clause of the Fourteenth Amendment. The Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant who has "certain minimum contacts with [the forum

state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  This minimum contacts requirement is met if the case arises out of a sufficient number of activities a defendant directs at the forum state (specific jurisdiction), or if a defendant has continuous and systematic contacts with the forum state (general jurisdiction).  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).  As a general matter, "[t]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts[.]"  *Pangaea, Inc. v. The Flying Burrito LLC*, 647 F.3d 741, 746 (8th Cir. 2011).

Courts consider the following five factors in determining whether the exercise of jurisdiction comports with due process:  (1) the nature and quality of the contacts with the forum, (2) the quantity of such contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991).  In establishing personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In this case, Farm Bureau has not conducted activities within the state of Arkansas to the extent that their contacts would justify the exercise of jurisdiction over them.  It is undisputed that Farm Bureau's principal place of business is in a state other than Arkansas and that they are incorporated in states other than Arkansas. Farm Bureau does not have any office, agent,

representative or employee in Arkansas and is not licensed to sell insurance in Arkansas. Moreover, Farm Bureau does not have an authorized agent for service of process in Arkansas, and has not directed its commercial or marketing activities or sales ventures towards Arkansas residents.

Plaintiffs implicitly acknowledge that significant minimum contacts between Farm Bureau and Arkansas are lacking. In fact, Plaintiffs have not even attempted to discuss or argue the five minimum contacts factors. Rather, Plaintiffs seem to argue that Farm Bureau's lack of direct contact with Arkansas is irrelevant because personal jurisdiction has been established by Farm Bureau's participation in a civil conspiracy. In *Gibbs v. PrimeLending*, 381 S.W.3d 829, 834 (Ark. 2011), the Arkansas Supreme Court held that exercising jurisdiction under the "conspiracy theory" of personal jurisdiction is permissible under Arkansas's long arm statute. Jurisdiction based on a conspiracy theory is established when "(1) two or more individuals conspire to do something (2) that they could reasonably expect to lead to consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would subject the non-resident to personal jurisdiction under the long-arm statute of the forum state..." *Gibbs*, at 832 (citing *Cowley v. Bloch*, 544 F.Supp. 133 (D. Md. 1982)). "Mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Agency Servs. of Arkansas, Inc. v. Mongar*, No. 4:14CV00012, 2014 WL 1760894, at *4 (E.D. Ark. May 2, 2014) (internal quotations omitted). Courts have required plaintiffs to plead with particularity specific facts "showing the participation in a conspiracy affecting the forum state that, when challenged, are supported by some evidence." *SFRL, Inc. v. Galena State Bank & Trust Co.*, CIV. 10-4152,

7

2011 WL 4479065 at *4 (D.S.D. Sept. 22, 2011). *See, e.g.*, *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020, 1031 (D.C. Cir. 1997); *Baldridge v. McPike, Inc.,* 466 F.2d 65, 68 (10th Cir. 1972).

The Court finds that Plaintiffs have failed to make a *prima facie* showing that Farm Bureau was involved in a conspiracy with the other named Defendants. The Amended Complaint is devoid of facts that, even if taken as true, would support their conspiracy claims. Plaintiffs state that Defendants, including Farm Bureau, "recognized" that the use of Colossus would lower their individual payouts and depress the value of nationwide bodily injury claims, including those in Arkansas. Plaintiffs also state that "each Defendant adopted efforts suggested by CSC and fellow Scheme members to keep the true nature and purpose of Colossus a secret." As proof of this alleged collective secrecy, Plaintiffs point to Defendants' individual licensing agreements with CSC which required each Defendant to report to CSC if they were asked to produce Colossus information to a plaintiff in discovery or in a regulatory proceeding or audit. Plaintiffs also reference "best practices" Colossus groups that Defendants participated in, but Plaintiffs have not specifically alleged or offered any evidence to show that Farm Bureau participated in these groups. Plaintiffs do not offer any information about when these groups might have convened or who was present. Plaintiffs do not allege which specific "best practice" policies were fraudulent or which polices were actually implemented by any Defendant.

The Court finds that these allegations are insufficient to support a conspiracy theory of personal jurisdiction. While Farm Bureau and the other Defendants' alleged use of Colossus might have had the effect of depressing the value of claims nationwide, Plaintiffs have not submitted any allegations or evidence to show that Farm Bureau or any of the other Defendants actually had this agreed upon goal. Plaintiffs have not specifically alleged that Farm Bureau had

any communication with the other Defendants or exchanged any Colossus-related materials with the other Defendants. In essence, Plaintiffs are asking the Court to infer that there was an agreement between the Defendants solely based on the fact that all of the Defendants allegedly used Colossus and all of the Defendants allegedly took steps to keep Colossus a secret. The Court declines to make this inference. If Colossus is an abusive program that allowed each Defendant to underpay their claims by 20%, as Plaintiffs' alleged, Defendants' individual use of Colossus and their desire to keep it a secret was in their own best interest, independent of the other Defendants. The alleged secrecy by each Defendant, in and of itself, does not evidence an agreement.

In sum, the Court finds that Plaintiffs have failed to make a *prima facie* showing that Farm Bureau participated in a conspiracy with knowledge of its effects in Arkansas so that Farm Bureau can be said to have purposefully availed itself of the privilege of conducting business in Arkansas. Even if Plaintiffs had made the requisite *prima facie* showing of a conspiracy, as explained above, their allegations are not specific enough to warrant the inference that Farm Bureau participated in that conspiracy. For these reasons, the Court finds no basis on which to exercise personal jurisdiction over Farm Bureau.

## CONCLUSION

For the reasons stated above, the Court finds that Farm Bureau's Motion to Dismiss (ECF No. 266) should be and hereby is **GRANTED**. All of Plaintiffs' claims against Farm Bureau are hereby **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED, this 10th day of March, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge
