UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

EDDIE BASHAM, as administrator
of the estate of James Basham, and
FREDA MCCLENDON, individually
and as class representatives on behalf
of all similarly situated persons                                                                    PLAINTIFFS

V.                                           CASE NO. 4:12-CV-4005

AMERICAN NATIONAL COUNTY
MUTUAL INS. CO., *et al.*                                                                            DEFENDANTS

## ORDER

Before the Court is a Motion to Dismiss (ECF No. 260) filed on behalf of the Met P&C Defendants.[1]  Plaintiffs have filed a response to the motion.  (ECF No. 274).  Met P&C has filed a reply.  (ECF No. 287).  The Court finds this matter ripe for consideration.

## BACKGROUND

This action is against over seventy insurance companies, including Met P&C, and it arises from their alleged use of a computer software program known as "Colossus."  Plaintiff Freda McClendon was an insured of Defendant Metropolitan Group Property and Casualty Company ("MGP&C").  James Basham was an insured of Defendant American National Property and Casualty Company ("ANPAC").[2]  Each of these Plaintiffs allege that the use of Colossus by all Defendants led to the underpayment and/or devaluation of their covered UM/UIM claims.

---

[1] The Met P&C Defendants are: Metlife Auto & Home, Metlife Auto & Home Group, Metropolitan Casualty Insurance Company, Metropolitan Direct P & C Insurance Company, Metropolitan General Insurance Company, Metropolitan Group Property & Casualty Company, Metropolitan Lloyds Insurance Company Of Texas, and Metropolitan P & C Insurance Company.

[2] Plaintiff Eddie Basham is the administrator of the estate of James Basham.

Colossus is a program that was developed, sold, and marketed by the Computer Science Corporation ("CSC"). The program was marketed to insurance companies nationwide as a "knowledge-based system for assessing general damages for bodily injury claims." (ECF No. 246, ¶ 3). According to Plaintiffs, Colossus was capable of being "tuned" or "calibrated" to achieve the goal of underpaying claims by up to twenty percent. Through the use of the Colossus software program, Plaintiffs allege that Defendants "systematically and uniformly pay and paid claimants…less than they were owed for bodily injury claims[.]" *Id*. at ¶ 6. This alleged use of Colossus and the resulting underpayments form the basis of this class action. The proposed class is comprised of "residents of the state of Arkansas" who "made a covered claim for bodily injury damages, before September 31, 2009...where [a] Defendant utilized Colossus in evaluation of the claim."[3] *Id*. at ¶ 92.

Plaintiffs allege the following claims against all Defendants in their First Amended Complaint (ECF No. 246): breach of contract; breach of the covenant of good faith and fair dealing (insurance bad faith); unjust enrichment; fraud; constructive fraud; and tortious interference with contract. While Plaintiffs' Amended Complaint does not allege civil conspiracy or fraudulent concealment as independent causes of action, the Amended Complaint does allege that Defendants were involved in a conspiracy to fraudulently conceal their use of Colossus. (ECF No. 246, ¶ 100-118). Plaintiffs allege that, by virtue of their participation in a Colossus conspiracy, Defendants "have subjected themselves to co-equal responsibility for the actions of all fellow conspirators." *Id*.

Plaintiffs' conspiracy allegations are detailed in the Amended Complaint under the heading, "The nature of the underpayment conspiracy and concert of action among Defendants."

---

[3] There are only thirty days in the month of September—not thirty-one as Plaintiffs' Amended Complaint suggests. Accordingly, the Court assumes that Plaintiffs' proposed class is comprised of residents of the state of Arkansas who made a covered claim for bodily injury damages before **September 30, 2009**.

(ECF No. 246, ¶ 53-91).  The allegations set out in some detail the history of Colossus's development and how CSC introduced it to the American insurance industry as a cost-saving tool. Plaintiffs claim that CSC, a non-party to this case, and Defendants had the goal of using Colossus to depress the value of bodily injury claims nationwide.  As evidence of this organized goal, Plaintiffs point to a CSC presentation stating that Colossus is used by "'more than 60% of the auto liability market' and has offered '19.8% average reduction to [bodily injury] settlements.'" *Id*. at ¶ 68.  Plaintiffs make the leap that, based on these figures, Defendants and CSC "recognized" that the use of Colossus would not only lower their individual payouts but would depress the value of nationwide bodily injury claims, including those in Arkansas.  If there is any documentary evidence of this "recognition" or agreement among Defendants to depress the value of claims nationwide, it is not included in the Amended Complaint.

Plaintiffs' conspiracy claims hinge largely on their allegations of secrecy surrounding Colossus.  Plaintiffs allege that "each Defendant adopted efforts suggested by CSC and fellow Scheme members to keep the true nature and purpose of Colossus a secret."  *Id*. at ¶ 67. Plaintiffs make multiple references to Defendants collectively "agreeing" to keep Colossus a secret from insureds and third parties.  Plaintiffs' allegations of collective secrecy appear to arise from CSC's Colossus licensing agreement.  Pursuant to the licensing agreement with CSC, an insurance company using Colossus was required to report to CSC if the insurance company was asked to produce Colossus information to a plaintiff in discovery or in a regulatory proceeding or audit.  CSC claimed that this notification was necessary in order to "take appropriate action to avoid disclosure of trade secrets and other confidential information." *Id*. at ¶ 76.  Based on this information, Plaintiffs conclude that "all fellow Scheme members took the position that almost all items related to Colossus were confidential or trade secrets in an effort to prevent the true

3

nature and purpose of the program from being discovered." The details regarding how or when this alleged position of collective secrecy was forged among Defendants is not alluded to in the Amended Complaint.

Plaintiffs' final conspiracy allegations involve the existence of "Colossus groups" that were sponsored by CSC. According to Plaintiffs, CSC utilized advisory councils and user communities made up of various insurance companies "'to help CSC understand the issues facing insurance companies on a day to day basis as well as being a good venue for to [sic] share industry information and learn from the experiences of other industry leaders.'" *Id*. at ¶ 80. Plaintiffs claim that these user communities allowed Colossus procedures to "cross-pollinate" through insurance companies. Plaintiffs also allege that, through CSC, "best practices" tips were individually disseminated to Defendants. Plaintiffs make no specific allegations and provide no evidence as to what procedures were "cross-pollinated," which Defendants received this "best practices" information from CSC, or which Defendants might have participated in these CSC-sponsored user groups and advisory councils.

In sum, Plaintiffs claim that "Defendants acted jointly and in concert by entering into a mutual agreement, albeit a non-written agreement, to commit a fraud against their own customers as well as those of other insurance companies through the reciprocal non-disclosure policy, and then participated in this fraud through the implementation of their individual Colossus schemes as part and parcel of the overarching Colossus Scheme." *Id*. at ¶ 89.

Met P&C's Motion to Dismiss raises multiple grounds for dismissal including lack of standing and failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6). Specifically, Met P&C claims that Plaintiffs have failed to plead the elements required to sustain their claims for breach of contract, breach of the covenant of good faith and fair dealing

4

(insurance bad faith), unjust enrichment, fraud, constructive fraud, and tortious interference with contract; that fraud-based conspiracy allegations have been pled with insufficient particularity under Federal Rule of Civil Procedure 9(b); and that the conspiracy allegations are insufficient under Federal Rule of Civil Procedure Rule 8.

## DISCUSSION

### A. Plaintiffs' Conspiracy Allegations

All of Plaintiffs' claims against the Met P&C Defendants, with one exception,[4] are dependent on the sufficiency of their conspiracy allegations. Accordingly, the Court will first determine whether Plaintiffs have sufficiently pled their conspiracy claim. A conspiracy claim is not independently actionable under Arkansas law, "but a recovery may be had for damages caused by acts committed pursuant to the conspiracy." *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 961, 69 S.W.3d 393, 406 (Ark. 2002). Stated another way, conspirators may be vicariously liable for wrongdoing that is independently actionable under state law and in furtherance of a conspiracy. In this case, the independently actionable claims that give rise to Plaintiffs' conspiracy claim are breach of contract, bad faith, unjust enrichment, tortious interference, and fraud. Plaintiffs do not allege that all of the Met P&C Defendants independently engaged in actions giving rise to each of these claims. For example, it is undisputed that James Basham was not an insured of Met P&C and had no contract with Met P&C. Thus, Met P&C cannot be directly liable for Basham's claims of breach of contract, unjust enrichment, or bad faith. Instead, Plaintiffs allege that, by engaging in a conspiracy to fraudulently conceal the use of Colossus and devalue claims nationwide, Met P&C is vicariously

---

[4] The exception is Plaintiff Freda McClendon's claims against her insurer, Separate Defendant Metropolitan Group Property and Casualty Company ("MGP&C"). Due to her contractual relationship with MGP&C, Plaintiff McClendon has direct claims against MGP&C that are not dependent on her conspiracy allegations. These direct claims will be addressed in a subsequent section.

liable for an alleged breach of contract committed by a Plaintiff's insurer. This conspiracy-based vicarious liability extends to all of the claims against Met P&C in Plaintiffs' Complaint (ECF No. 246).[5]

Met P&C argues that Plaintiffs have offered nothing but insufficient, conclusory allegations that do not state a viable conspiracy claim under Rule 8 or the more stringent standards of Rule 9(b). Given that Plaintiffs' claims against Met P&C depend on the existence of a viable conspiracy claim,[6] Met P&C argues that a dismissal of all claims against them is warranted. While Plaintiffs do not dispute that their claims against Met P&C are dependent on a viable conspiracy claim,[7] they maintain that they have met their pleading burden at this stage in the proceedings.

"To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose,

---

[5] Breach of contract, ¶ 124: "As a result of the close participation between Defendants in the conspiracy and the obviously wrongful nature and purpose of the conspiracy, each Defendant is liable for the breach of contract by every other Defendant." Bad faith, ¶ 133: "Because of the high level of cooperation between Defendants in carrying out the wrongful and improper acts of the conspiracy, which resulted in each Defendant knowingly breaching its duty of good faith and fair dealing to its insureds, and knowingly allowing and encouraging every other Defendant to breach its duty of good faith and fair dealing to its insureds, each Defendant is liable for the breach of duties owed by every other Defendant." Unjust enrichment, ¶ 145: "Each Defendant was unjustly enriched by every other Defendant's participation in the Colossus Scheme described herein. By participating in the Colossus Scheme, each Defendant was allowed to improperly pay less on bodily injury claims by virtue of the other Defendant's participation in the scheme. Thus, each Defendant contributed to the unjust enrichment of every other Defendant." Fraud, ¶ 164: "Because of the close cooperation among Defendants in perpetuating the Colossus Scheme and because of each Defendant's active role in keeping the scheme hidden from Plaintiffs and Class Members, each Defendant is responsible for the fraud of every other Defendant. Additionally, each Defendant had a duty to disclose the improper nature and purpose of the Scheme, but did not do so. As a result of their participation in and failure to disclose the improper Scheme, each Defendant is liable for the wrongful conduct of every other Defendant." Tortious interference, ¶ 174: "Through a concerted conspiracy of silence and secrecy, the Defendants who did not insure Plaintiffs or Class Members intentionally interfered with the insurance contract of Plaintiffs and Class Members by allowing, encouraging and abetting the Defendants who did hold such policies to serially breach the express terms of such agreements and the implied duty of good faith and fair dealing contained in such insurance contracts by knowingly and intentionally underpaying UM/UIM claims through the use of Colossus."

[6] Again, the one exception is Plaintiff Freda McClendon's claims against her insurer, Separate Defendant MGP&C. These direct claims do not depend on the existence of viable conspiracy allegations.

[7] The Court infers Plaintiffs' agreement on this point based on the way Plaintiffs' claims are pled. Furthermore, in their response to Met P&C's Motion to Dismiss, Plaintiffs focused extensively on their conspiracy allegations to support their claims for breach of contract, bad faith, unjust enrichment, fraud, and tortious interference.

not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." *Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 961, 69 S.W.3d 393, 406 (Ark. 2002). "A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence." *Mason v. Funderburk*, 247 Ark. 521, 529, 446 S.W.2d 543, 548 (Ark. 1969). "It also may be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment." *Id*.

Plaintiffs summarize their conspiracy claim as follows:

> With respect to the overarching Colossus conspiracy and the individual Colossus schemes, Defendants acted jointly and in concert by entering into a mutual agreement, albeit a non-written agreement, to commit a fraud against their own customers as well as those of other insurance companies through the reciprocal non-disclosure policy, and then participated in this fraud through the implementation of their individual Colossus schemes as part and parcel of the overarching Colossus Scheme.

(ECF No. 246, ¶ 89). Plaintiffs further allege that "Defendants' acts of participation in the Colossus Scheme constitute positive acts of fraud that were furtively planned and secretly executed in a manner that was designed to conceal the conspiracy and its wrongful acts." *Id*. at ¶ 105.

The parties disagree about which pleading standard should apply when considering the conspiracy allegations set forth above. Met P&C maintains that the conspiracy claim should be held to the Rule 9(b) particularity standard because the conspiracy claim, and all of the underlying causes of action, are based on fraud. Plaintiffs contend that the more lenient

plausibility standard under Rule 8 should apply. The Court will consider the sufficiency of Plaintiffs' conspiracy claim under both standards.

### B. The sufficiency of the conspiracy allegations under Rule 9(b)

Conspiracy claims do not, as a general rule, have to be pled with particularity. *See Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1070 (D. Minn. 2003). However, when a conspiracy claim is based on fraud, Rule 9(b) requires the fraud to be pled with particularity. *Siegel v. Deutsche Bank Nat. Trust Co.*, 409 F. App'x 975, 976 (8th Cir. 2011) (affirming district court dismissal where Plaintiff had "not established their state common-law fraud and civil conspiracy claims with sufficient particularity, as required under Rule 9(b)[.]"); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (affirming district court's dismissal of a "conspiracy to commit fraud" claim because plaintiff had failed to meet the heightened Rule 9(b) pleading standard); *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 347 (3d Cir. 2010) ("Rule 9(b) requires fraud to be pled with particularity in all claims based on fraud.") (citations and quotation marks omitted).

In this case, Plaintiffs' conspiracy claims seem to rest on their allegations of fraud, thereby triggering the application of Rule 9(b). The thrust of the alleged conspiracy was Defendants' non-disclosure of Colossus information. Plaintiffs allege that this purposeful withholding of information was an effort to mislead, defraud, and deprive Plaintiffs of benefits "through fraudulent conduct." (ECF No. 246, ¶ 113). It was this alleged conspiracy to defraud that resulted in the underpayment and devaluation of claims which in turn gave rise to Plaintiffs' claims for breach of contract, bad faith, unjust enrichment, fraud, constructive fraud, and tortious interference. Accordingly, the Court finds that the application of Rule 9(b) is appropriate as to Plaintiffs' conspiracy claim.

Fraud-based conspiracy allegations must amount to more than mere conclusions in order to comply with Rule 9(b).  Rule 9(b) requires that the complaint must plead "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006).  In sum, the "complaint must set forth the who, what, when, where, and how surrounding the alleged fraud." *E-Shops Corp. v. U.S. Bank National Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012).

After reviewing Plaintiffs' fraud-based conspiracy allegations, the Court finds that Plaintiffs have failed to plead the allegations with sufficient particularity. In an extremely conclusory fashion, Plaintiffs repeatedly allege that all Defendants "conspired to use Colossus to reduce the amount paid on bodily injury claims" and "conspired to withhold information from insureds and the public about the true nature and purpose of Colossus."  To support these assertions, Plaintiffs state that Defendants "recognized" that the use of Colossus would lower their individual payouts and depress the value of nationwide bodily injury claims, including those in Arkansas.  Plaintiffs also state that "each Defendant adopted efforts suggested by CSC and fellow Scheme members to keep the true nature and purpose of Colossus a secret."  The only factual allegations related to these secrecy efforts are that Defendants had individual licensing agreements with CSC that required each Defendant to report to CSC if they were asked to produce Colossus information and that Defendants participated in "best practices" Colossus groups where Colossus procedures and best practices "cross-pollinated" through the insurance companies.  Plaintiffs do not identify which Defendants participated in these groups.  Plaintiffs do not offer any information about when these groups might have convened or who was present.

9

Plaintiffs do not allege which specific "best practice" policies were fraudulent or which polices were actually implemented by any Defendant. Plaintiffs generally allege that Defendants "agreed to commit fraud" but they have offered no factual allegations regarding when or how such an agreement was made. Plaintiffs have not alleged that any specific Defendant had any contact whatsoever with another Defendant.

In sum, Plaintiffs' Amended Complaint lacks the specificity to show any fraud-based conspiratorial agreement between the Defendants or concerted actions or conduct undertaken in furtherance of an agreement. Due to Plaintiffs' failure to state a viable conspiracy claim under Rule 9(b), all of Plaintiffs' underlying causes of action which were premised on the existence of a conspiracy must also be dismissed.

### C. The sufficiency of the conspiracy allegations under Rule 8

Even if the Rule 9(b) particularity requirement is not applied to Plaintiffs' conspiracy claim, the claim is insufficient under the more lenient plausibility standard of Rule 8. Rule 8 requires a complaint to make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A complaint states a plausible claim for relief if its "factual content…allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). While the Court must generally take a plaintiff's factual allegations as true in the Rule 12(b)(6) context, this tenet does not apply to "legal conclusions or 'formulaic recitation of the elements of a cause of action'[.]" *Braden v. Wal-Mart Stores, Inc*., 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In the context of conspiracy claims, the Eighth Circuit has noted that, because conspiracies "are by their nature usually clandestine," Rule 8 does not require that a plaintiff have "direct evidence of a conspiratorial agreement" to withstand a motion to dismiss. *White v. Walsh*, 649 F.2d 560, 561 (8th Cir. 1981) (quoting *Sparkman v. McFarlin*, 601 F.2d 261, 278 n.19 (Swygert, J., dissenting)). However, the conspiracy allegations must be "sufficiently specific." *Id*. There "must be allegations that the defendants [] directed themselves toward an [] action by virtue of a mutual understanding" and "some factual allegations suggesting such a 'meeting of the minds.'" *Id*. (quoting S*parkman v. McFarlin*, 601 F.2d 261, 268 (7th Cir. 1979)). "Whether sufficiently specific facts are alleged in any case must ultimately be determined on a case-by-case basis." *Id*.

Plaintiffs' fraud-based conspiracy claims fail to meet the Rule 8 requirements for many of the same reasons the claims failed to meet the requirements under Rule 9(b): the claims are highly conclusory, extremely broad, and very thin on facts. Plaintiffs' conspiracy claims largely rest on their allegations of parallel conduct among Defendants—not on evidence of an actual agreement among the Defendants. While Met P&C and the other Defendants' alleged use of Colossus might have had the effect of depressing the value of claims nationwide, Plaintiffs have not submitted any allegations or evidence to show that Met P&C or any of the other Defendants actually had this agreed upon goal. If Colossus is an abusive program that allowed each Defendant to underpay their claims by 20%, as Plaintiffs' have alleged, Defendants' individual use of Colossus and their desire to keep it a secret was in their own best interest, independent of the other Defendants. The alleged secrecy by each Defendant, in and of itself, does not evidence an agreement, and Plaintiffs have not specifically alleged that Met P&C had any communication with the other Defendants or exchanged any Colossus-related materials with the other

Defendants. Because Plaintiffs have not supported their parallel conduct claims with factual allegations that suggest an actual agreement among Defendants, the Court finds that the conspiracy claim falls short of plausibility. Accordingly, the Court finds that Plaintiffs' conspiracy claim should be dismissed.

Due to Plaintiffs' failure to state a claim for conspiracy, all of Plaintiffs' underlying causes of action which were premised on the existence of a conspiracy must also be dismissed.[8]

### D. Plaintiff McClendon's Direct Claims Against MGP&C

As mentioned above, the only claims against a Met P&C defendant that are not dependent on conspiracy allegations are Plaintiff Freda McClendon's claims against her insurer, Separate Defendant MGP&C. MGP&C has submitted some dismissal arguments on McClendon's direct claims for breach of contract, bad faith, unjust enrichment, tortious interference, fraud, and constructive fraud. However, a large portion of MGP&C's motion, and the vast majority of Plaintiffs' response, was devoted to the sufficiency of the conspiracy allegations. Due to a lack of comprehensive briefing, and due to the changing landscape of the case as a result of the Court's ruling on the conspiracy allegations, the Court finds that MGP&C's motion on Plaintiff McClendon's direct claims should be denied without prejudice at

---

[8] Because the Court has found that Plaintiffs' conspiracy claims are not viable, each named Plaintiff only has standing to pursue claims against Defendants with whom they had a contractual relationship. *Canady v. Allstate Ins. Co.*, 162 F.3d 1163 (8th Cir. 1998) ([A]bsent a viable claim of conspiracy, plaintiffs lack standing to sue defendants with whom they had no contact."); *Hall v. Lhaco, Inc*., 140 F.3d 1190, 1196 (8th Cir.1998) (when a plaintiff "does not have standing to pursue his claim…it is immaterial whether any member of the potential class would have standing to pursue [the] claim. [The plaintiff] is not a proper representative of the class where he himself lacks standing to pursue the claim."). Accordingly, to the extent that Plaintiff Basham is pursuing direct, non-conspiracy based claims on behalf of proposed class members who are insureds of the Met P&C Defendants, the claims are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). To the extent that Plaintiff McClendon is pursuing direct, non-conspiracy based claims on behalf of proposed class members who are insureds of Separate Defendants Metlife Auto & Home, Metlife Auto & Home Group, Metropolitan Casualty Insurance Company, Metropolitan Direct P & C Insurance Company, Metropolitan General Insurance Company, Metropolitan Lloyds Insurance Company Of Texas, and Metropolitan P & C Insurance Company, the claims are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

this time. MGP&C should re-file its motion to dismiss and focus on (1) Plaintiff McClendon's direct claims against MGP&C and (2) how this case should progress in its current iteration.

## CONCLUSION

For the reasons stated above, the Court finds that Met P&C's Motion to Dismiss (ECF No. 260) should be and hereby is **GRANTED in part** and **DENIED in part**. All of Plaintiffs' conspiracy-based claims against Met P&C are hereby **DISMISSED WITHOUT PREJUDICE**. The only claims that remain are Plaintiff Freda McClendon's direct claims against Separate Defendant MGP&C.

IT IS SO ORDERED, this 10th day of March, 2015.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge